**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | CRIMINAL NO. H-10-787 |
| | § | |
| **ALIREZA ETESSAMI** | § | |
| | § | |
| | § | |

## GOVERNMENT'S SURREPLY

COMES NOW the United States of America, by and through the United States Attorney for the Southern District of Texas, and files this Surreply.

Defendant has failed to satisfy his burden of proof to demonstrate the materiality of the deposition testimony he seeks. For that reason, in addition to the grounds stated in the Government's Response Brief, the Court should deny Defendant's Motion for Rule 15 depositions.

## I.      The Defendant Bears the Burden of Proof to Show Materiality

According to the Courts of Appeals, "the burden of proof in a Rule 15(a) motion rests with the movant to demonstrate the necessity of preserving a prospective witness's testimony with a deposition." *United States v. Olafson,* 203 F.3d 560, 567 (9th Cir. 2000)*; United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993) ("The burden is on the moving party to establish exceptional circumstances justifying the taking of depositions."); *United States v. Ismaili*, 828 F.2d 153, 159 (3rd Cir. 1987). In order to show that a deposition is "in the interest of justice" as required by Rule 15, the party seeking the deposition must show that the witnesses's testimony is "material." *United States Dillman*, 15 F.3d 384, 389 (5th Cir. 1994).

II.     **Materiality is a Far Higher Standard than Relevance**

The decisions of the Fifth Circuit, and those of other circuits that the Fifth Circuit has relied upon, make clear that "materiality" in the context of Rule 15 is a far higher threshold than mere relevance.  And while there is no doubt that Defendant has described some areas of testimony that would certainly be relevant and helpful to his knowledge defense, he has not proffered testimony that is truly material to his guilt or innocence within the meaning of Rule 15.

In *United States Dillman*, 15 F.3d 384 (5ᵀʰ Cir. 1994), the Fifth Circuit declined to find that the district court should have ordered a Rule 15 deposition.  Defendant Dillman was the chairman of Caprock Savings and Loan, which sought to artificially improve its balance sheet through a fraud scheme. Caprock loaned money that was laundered and then returned to Caprock as capital. Dillman's defense was that he did not know the money that was ultimately invested back into Caprock originally came from Caprock.  Dillman sought a Rule 15 order to depose a witness who was under investigation and outside the court's subpoena power and who was the manager of one of the companies that was involved in laundering and then re-injecting Caprock's funds.  Dillman claimed the witness would testify that he had represented to Dillman that the money that came from the witness's company and that was injected into Caprock was derived from independent sources with no relation to Caprock.  Dillman claimed the testimony would be material to determining whether he believed the money came from Caprock or from other sources.

The *Dillman* court assumed without deciding that the witness's testimony was material but held that  any error in denying the deposition was harmless.  *Id*. at 389.  The court noted that the witness had not attended the key meetings in which the conspirators concocted their scheme and could only have focused on the acts of the defendants after they had already agreed to their scheme. *Id*.  In addition, the court found the testimony to be cumulative of other evidence.  *Id*.  The court stated that even assuming the greatest benefit to Dillman from the witness's testimony, "that

testimony still could not have exculpated Dillman." *Id*.  In short, although the witness offered testimony that was clearly relevant to Dillman's knowledge defense, the court held the deposition was not required.

In reaching this holding, the court in *Dillman* relied primarily on two cases.  *See Id*.   The first is *United States v. Bello*, 532 F.2d 422 (5th Cir. 1976).  In that case, a government witness testified that his cocaine supplier, named Eppinger, told him that he was supplied with cocaine by defendant Bello.  That witness further testified that after one of his cocaine purchases from Eppinger, Bello walked into the room, and Eppinger gave Bello the drug purchase money.  A second government witness testified that Eppinger told him his source of supply for cocaine was Bello and that Bello traveled bi-weekly to South America to purchase cocaine.  Bello testified in his own defense that the money he had received from Eppinger was actually payment for a legitimate debt that Eppinger owed him and that there were legitimate business reasons for Bello's trips to South America.

To corroborate his testimony, Bello sought a Rule 15 order permitting him to depose his business associates in South America.  The court declined to order the depositions, noting that depositions indicating that Bello had legitimate business purposes for his trips would not necessarily contradict the testimony regarding Bello's cocaine sales, nor would it be inconsistent with the testimony that Bello purchased cocaine during trips to South America.  *Id*. at 423.  Although the depositions clearly would have provided relevant corroborative evidence for Bello, the court held the depositions were not required by "exceptional circumstances" or the "interest of justice" under Rule 15.  *Id*.  In short, Bello's proposed testimony, even if believed by the jury, did not necessarily exculpate him, and the court denied the depositions.

The second case relied upon by *Dillman* is *United States v. Hernandez-Escarsega*, 886 F.2d 1560 (9th Cir. 1989).  In this case, defendant Hernandez was prosecuted for various drug crimes.

Hernandez sought to depose a witness in Mexico whose testimony he claimed was material to his defense but who would not come to the United States because he feared arrest on an outstanding federal indictment.  The court held that "fugitive status is a relevant but not dispositive factor in the Rule 15(a) calculus" and stated that, even with a fugitive witness, at times it would be "unjust to deprive a defendant of what may be crucial exculpatory testimony."  *Id*. at 1569.  Hernandez made a detailed offer of proof of the expected testimony, but the court concluded that "Hernandez had made an insufficient showing of need to justify the procedure."  *Id*. at 1570.  The court held, "the evidence was in some respects irrelevant and in others cumulative and possibly inadmissible as hearsay."  *Id*.    The court therefore denied the deposition.  In short, for a fugitive witness, a deposition may be justified for "crucial exculpatory testimony" that does not suffer from evidentiary shortcomings.

Similarly, in *United States v. Kessler*, No. 98-50071, 1998 WL 870694 (5th Cir. Dec. 2, 1998) (unpublished), the court declined to order a foreign deposition because the testimony did not meet the materiality test.  In *Kessler*, the defendants were found inside a barn with a large amount of marijuana.  The defendants argued that they were "merely present" in the barn and that they had not conspired to distribute marijuana.  In support of their argument that they had not joined the conspiracy, the defendants sought to depose a witness in Mexico who would testify that he did not expect the defendants to be in the barn on the night of the arrest and that the defendants did not have prior knowledge of the marijuana's presence in the barn until shortly before their arrests.  While this evidence would arguably have been relevant to whether the defendants were merely present or were active members of the conspiracy, the court upheld the denial of the deposition.  *Id*. at *10.  The court held that, at best, the testimony would have supported an inference that the witness "did not know who his coconspirators would be, an issue immaterial to the question of whether the [defendants] were guilty of possession or conspiring to distribute marijuana."  *Id*.

These holdings are consistent with the Fifth Circuit's decision in *United States v. Farfan-Carreon*, 935 F.2d 678 (5th Cir. 1991), in which the court held that a Rule 15 deposition should have been ordered.  In that case, defendant Farfan was arrested when he drove a pickup truck across the U.S. border from Mexico with marijuana hidden in a secret compartment in the vehicle's bumper.  Farfan claimed no knowledge of the marijuana.  Farfan, a taxi driver, claimed he was approached in Mexico at his taxi stand by an alien smuggler named Pilingas who offered Farfan twenty dollars to drive the truck across the border and deliver it to two aliens who owned the truck.  Farfan claimed he specifically asked Pilingas whether the truck contained contraband, and Pilingas insisted it did not.  Farfan sought the deposition of Pilingas who would not come to the U. S. for fear of arrest.  According to Farfan, Pilingas would testify consistent with Farfan's statement that Farfan had no knowledge of the marijuana.  The Fifth Circuit held the deposition should have been taken.  *Id*. at 680.

In *Farfan*, the entire case hung on Farfan's knowledge.  Based on what Farfan had stated, Pilingas would have been the only source of that knowledge—either Pilingas told Farfan the truck contained drugs, or he did not.  In this respect, testimony by Pilingas that he did not tell Farfan about the marijuana would have exculpated Farfan, and, if believed by the jury, would likely have required acquittal.  Because the testimony was "material" under Rule 15, the court held that the deposition should have been taken.

What is clear from this line of cases is that the "materiality" required for a Rule 15 deposition is a very different standard from "relevance."  The proposed deposition testimony must do far more than merely corroborate, support, or be relevant to the defense.  When a fugitive witness is the proposed deponent, the testimony must go to the heart of the issue in the case.  It must actually exculpate the defendant, such that, if the jury believes that testimony, it would likely have to acquit

the defendant.  The proposed testimony must also be admissible and not be objectionable as being hearsay or cumulative.

In his Reply Brief, Defendant bases his argument on a mistaken understanding of the meaning of "materiality."  Referring to the materiality requirement, Defendant states, "if a defendant is able to show that a witness' probable testimony will potentially exculpate him <u>or will be able to assist him in his defense</u>, the defendant has satisfied the second prong of the test."  Def. Reply at 4 (emphasis added).  "Able to assist him in his defense," however, is not the test.  Based on the authorities discussed above, "materiality" under Rule 15 is a much higher hurdle for Defendant to cross.

### III.   Defendant Fails to Demonstrate that the Proposed Deposition Testimony is Material

Despite two rounds of briefing, including providing affidavits from his fugitive witnesses, Defendant still cannot show that his proposed deposition testimony is material.

#### A.   The Affidavits

Defendant Etessami's defense is knowledge—that he did not know kickbacks were being paid by Lake Huron to Lyondell.  Defendant claims his proposed depositions are material to that defense, and he submits affidavits from his deponents in support of that claim.  Although the affidavits are from four different witnesses, they are identical.  In relevant part, the affidavits state:

> I know from my first involvement in this matter that Mr. Etessami believed, at all times, that his conduct was not illegal or improper and that Jonathan Barnes was acting with the full knowledge, consent and authority of his employer, specifically Lyondell Petroleum.  We believed this to be true based upon the representations that were made by Jonathan Barnes.

Def. Reply Ex. A.  The witnesses, however, cannot properly testify to what Etessami knew or believed.  Such opinion testimony is speculative.  Rather, they can testify to what they knew, how they knew it, what they told Etessami, or what was said to Etessami in their presence (which would not be offered for the truth but for the fact that it was said and the effect on the listener).  The

affidavits do not describe any of these potentially admissible facts that would go to Etessami's knowledge; instead they state a speculative opinion about Etessami's state of mind.

**B.    The Motion**

In his Motion for Rule 15 Depositions, Defendant Etessami expands upon the statements in the affidavits but still does not satisfy the materiality requirement. The two main problems are, first, that to a large extent Etessami describes topics of testimony instead of the testimonial facts themselves. And, second, to the extent Etessami identifies actual facts instead of topics, the facts he identifies do not exculpate him.

In his Motion, Defendant claims proposed deponent Gustavo Gimeno would say that Gimeno knows details of Etessami's relationshhip with Lyondell, knows who at Lake Huron designed and executed the billing arrangement with Barnes, and knows Barnes's role in their business dealings. Def. Motion at 3-4. These however, are all topics of testimony, and there is no suggestion that these topic areas contain exculpatory facts.

According to Defendant, Gimeno would also say that he can explain why Etessami was hired and why Lake Huron employed its unique billing arrangement with Lyondell. Gimeno would further state that he believed Barnes was reporting everything to Lyondell and that Etessami never discussing billing arrangements with Barnes. According to Gimeno, Etessami acted under the direction of Nones, who was the one who had the relationship with Barnes.

While some of these statements are arguably relevant to Defendant's knowledge defense, they do not rise to the level of materiality since none of them, if believed, would necessitate an acquittal. The fact that Gimeno may have believed there were legitimate business reasons for Lake Huron's billing scheme with Lyondell does not necessarily mean Etessami shared that belief. Similarly, Lake Huron may have hired Etessami because of his glowing reputation, but that reputation does not mean Etessami did not know about the kickbacks. Etessami may not have had

any business dealings with Barnes and may have acted only under the direction of Nones, but, of course, there is no legal requirement that all coconspirators deal with each other, or even know about each other, in order to be guilty of conspiracy. *See Kessler*, 1998 WL 870694 at *10. The fact that Etessami dealt primarily with Nones does not mean that Etessami was not in a conspiracy with Barnes and did not know about the kickbacks paid to Barnes.

Next, according to Defendant, proposed deponent William Alvaro can allegedly provide a legitimate business reason for Lake Huron's pricing, and Alvaro can also testify to Etessami's reputation. Def. Mot. at 4. Like the testimony by Gimeno, this testimony does not satisfy the materiality requirement. Even if Etessami had an honorable reputation and there were seemingly legitimate reasons for the high prices to Lyondell, it does not necessarily follow that Etessami did not know Lake Huron was in fact paying kickbacks. Like Gimeno, Alvaro may provide evidence that is relevant or useful to a knowledge defense, but he does not provide material evidence since his testimony does not necessarily exculpate Etessami.

Similarly, proposed deponent Denny Martinez would give supposed legitimate business reasons for the pre-pay pricing system employed with Lyondell and would state that Etessami had no role in setting it up. Def. Mot. at 4-6. He would testify to Etessami's history of transparent financial dealings. He would also state that he believed Barnes was acting properly and that Lyondell was getting its money back. He also believed that Venezuelan law permitted their business arrangement with Lyondell. Again, Martinez's beliefs do not control Etessami's beliefs. Etessami may very well have believed something different from Martinez about the legitimacy of the pricing scheme. Since Martinez's testimony is not necessarily exculpatory, it is not material.

Finally, like the other witnesses, proposed deponent Guillermo Nones would testify to Etessami's reputation. Def. Mot. at 6. He would also explain the effect Lyondell's bankruptcy had on Lake Huron's business dealings with Lyondell and why Lake Huron's prices were high. He

would state that he dealt with Barnes and believed Barnes was acting properly on Lyondell's behalf. As with the other witnesses, Nones's beliefs about pricing and about Barnes do not necessarily control Etessami's beliefs.

## CONCLUSION

In the context of a Rule 15 deposition of a fugitive, materiality is a very high standard. While Defendant lists many topics of testimony, he does not identify many actual testimonial facts to satisfy his burden of proof. The few alleged facts that he identifies that arguably relate to his knowledge defense are that Defendant has a good reputation, there appeared to be legitimate business reasons for the high pricing to Lyondell, deponents believed Barnes was acting in Lyondell's interest, Etessami was not involved in setting up the billing arrangement with Lyondell, and Etessami had little interaction with Barnes and dealt mostly with Nones. This testimony, while useful to the defense, is not necessarily exculpatory. The testimony does not dictate that Defendant had no knowledge of the kickback scheme. Since the proposed testimony does not necessarily exculpate Defendant Etessami, it is not material and does not justify the depositions. Defendant, therefore, has failed to meet his burden of proof, and his request for Rule 15 depositions should be denied.

<div style="margin-left: 40%;">

Respectfully Submitted,

KENNETH MAGIDSON
UNITED STATES ATTORNEY


*/s/ Robert S. Johnson*
Robert S. Johnson
Assistant United States Attorney

</div>

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was delivered to all counsel of record on November 8, 2012, by electronic filing.


*/s/ Robert S. Johnson*
Robert S. Johnson
Assistant United States Attorney